IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 23-CR-051-2 (ABJ) |
| DYANI PEZZELLE, : | |
| : | |
| *Defendant*. : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing.  For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 46 months' imprisonment, at the bottom of the guidelines range, to be followed by 5 years of supervised release.

## FACTUAL BACKGROUND

1.  Beginning in at least August 21, 2022, Dyani Pezzelle, the Defendant, conspired with Jacob Blair, her co-defendant to sell fentanyl online in mass quantities.  Between August 1, 2022 and February 24, 2023, when she was arrested, the Defendant operated as an online narcotics vendor known as "YourVendorSupplier" or "YVS."  The Defendant and her co-conspirator advertised themselves on the online narcotics forum Tor2Door as "a syndicate of professionals that specialize in making the best products the markets have to offer.  We focus on quality, consistency, stealth, and speed.  Nothing but the best . . . now vending on 5 markets, time will show that we mean business, and we're here to stay."  She listed a variety of drugs for sale on Tor2Door, including multiple varieties of counterfeit Oxycodone pills, counterfeit Adderall pills, and counterfeit Xanax pills.  The counterfeit Oxycodone pills contained fentanyl and the

counterfeit Adderall pills contained methamphetamine.

2. Between August 1, 2022 and February 24, 2023, the Defendant made at least 459 illegal narcotics sales.

3. Between August 1, 2022 and February 24, 2023, the Defendant posted these controlled substances on Tor2Door and other marketplaces for sale. The Defendant and her co-conspirator received orders for illegal narcotics and received payment in the form of Bitcoin or Monero cryptocurrency on Tor2Door and other marketplaces, a common practice among online narcotics traffickers to hide the source and eventual destination of their narcotics proceeds. After payment was confirmed, the Defendant and her co-conspirator would pack the illegal narcotics in vacuum sealed packaging, packing materials, and padded shipping envelopes to disguise the contents, and drop the packages in various United States Postal Service drop boxes located in West Virginia and Pennsylvania for shipment throughout the United States, including to the District of Columbia.

4. The Defendant and her co-conspirator shipped counterfeit Oxycodone pills containing fentanyl to the District of Columbia on at least six occasions. These pills also contained the synthetic opioid metonitazene, a Schedule I controlled substance. Metonitazene is ten times as powerful as morphine when taking orally. The Defendant and her co-conspirator also shipped counterfeit Adderall pills containing methamphetamine to Washington, DC at least three times.

5. On February 22, 2023, law enforcement executed a controlled delivery and search warrant at the residence the Defendant shared with her co-conspirator. Both were present inside of the residence at the time of the search. At approximately 6:00 a.m., her co-conspirator was operating their darknet narcotics trafficking account at a computer in the living room. During the

search, law enforcement recovered items including, but not limited to, the following: two firearms, a loaded Intratec 22LR which is an assault rifle style handgun loaded with rifle rounds and a loaded Glock 43 9mm handgun, located next to the computer and chair in the living room where her co-conspirator was working on their online narcotics trafficking account; in a bedroom, law enforcement found approximately 21,102 blue tablets marked "M 30," which DEA laboratory testing determined to weigh approximately 2,340 grams and contain fentanyl; additional suspected controlled substance powder and pills; assorted ammunition; a Nutribullet with powder residue, indicative of narcotics manufacturing; and other pill manufacturing, packaging, and distribution supplies.

6. In her plea, the Defendant admitted that she was intended to distribute the 2,340 gram mixture containing fentanyl.

## PROCEDURAL BACKGROUND

7. On March 23, 2023, a federal grand jury empaneled in the District of Columbia returned a four count Indictment charging the Defendant with Conspiracy to Distribute and Possess with Intent to Distribute Four Hundred Grams or More of Fentanyl, Methamphetamine, and Metonitazene, in violation of 21 USC §§ 846, 841(b)(1)(B) and (b)(1(C).

8. On March 4, 2025, the United States Attorney for the District of Columbia filed a two count Superseding Information charging the Defendant with Conspiracy to Distribute and Possess with Intent to Distribute 40 Grams or More of Fentanyl, and 50 Grams or More of Methamphetamine, in violation of 21 USC § 846).

7. On March 5, 2025, the Defendant pled guilty to the Superseding Information. Pursuant to the written plea agreement, the offense of conviction carries a mandatory minimum term of imprisonment of 5 years and a maximum sentence of 40 years imprisonment; a fine not to

exceed $5,000,000; and a term of supervised release of at least 4 years. The Defendant also agreed to pay a special assessment of $100.

## I.     LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;
2) the need for the sentence imposed –
    A) to reflect the serious of the offense, to promote respect for the law, and to provide just punishment for the offense;
    B) to afford adequate deterrence to criminal conduct;
    C) to protect the public from further crimes of the defendant; and
    D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3) the kinds of sentences available;
4) the kinds of sentence and the sentencing range established for –
    A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        i)     issued by the Sentencing Commission . . . ; and
        ii)    that . . . are in effect on the date the defendant is sentenced;
5) any pertinent policy statement –
    A) issued by the Sentencing Commission . . . and
    B) that . . . is in effect on the date the defendant is sentenced
6) the need to avoid unwarranted sentence disparities among defendants with similar

   records who have been found guilty of similar conduct; and
7) the need to provide restitution to any victims of the offense.

  Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 551 U.S. 338, 348 (2007).

**II. GUIDELINES CALCULATION**

  The PSR correctly calculates the Defendant's Offense Level (23) and Criminal History Category (I). (ECF 87 ¶ 63.) This calculation is based on the quantity of Fentanyl that the Defendant was responsible for (ECF 87 ¶ 53) and a Zero Point Adjustment based on her criminal history (ECF 87 ¶ 62). In addition, the Defendant does meet the requirements for a further Safety Valve reduction. (ECF 87 ¶ 35). The Government has agreed to recommend and move for a reduction of three total offense levels for the Defendant's timely acceptance of responsibility, (ECF 87 ¶¶ 60-61.) The Defendant was also a minor participant in the conspiracy (ECF 87 ¶ 108), although it is important to recognize that it was a prolific conspiracy moving an enormous volume of illicit and very dangerous narcotics

  The Defendant's Criminal History Category is I because the Defendant has no prior criminal history. (ECF 87 ¶ 66.)

  The Defendant's Guidelines range is therefore 46 to 57 months in prison, followed by a term of at least five years of supervised release. (ECF 87 ¶ 107.) A 5-year mandatory minimum sentence does not apply (ECF 87 ¶ 106) effectively making the Guidelines Range 46-57 months of incarceration. *Id.*

**III.   ARGUMENT**

The Defendant's criminal conduct merits a period of incarceration within the sentencing guidelines of 46-57 months. The Government's request is borne out by the Section 3553(a) factors, discussed below.

**1. The Nature, Circumstances, and Seriousness of the Offense**

The dangerousness of the Defendant's crimes is self-evident: She had more than 21,000 blue M30 fentanyl tablets that she intended to sell on the internet. She also had a raft of firearms in her home which was full of opioids, packaging, and other indications that they intended to manufacture their own opioid pills. The Defendant's fentanyl trafficking was not incidental or happenstance. They appear to have been manufacturing the opioid pills they shipped out in their shared home. She was part of this conspiracy for months and was part of over 450 narcotics sales during that time alone. It is important to note that she faced a potential mandatory minimum sentence based on the significant quantity of fentanyl she trafficked as part of the conspiracy and only avoided the mandatory minimum because this was her first, although profoundly significant, involvement in the criminal justice system.

The nature of the Defendant's conduct demands a sentence of incarceration within the sentencing guidelines.

**2. The Defendant's History and Characteristics**

The Defendant's lack of a criminal history makes her conduct here all the more concerning. Apparently without any previous criminal experience, the Defendant agreed to become an online narcotics trafficker. It is true that she had a difficult childhood and has been in some form of mental health therapy since she was very young. (*See* ECF 87 ¶ 85.) And, she has a four month old child.

And yet, it is hard to ignore the significant criminal activity here regardless of her personal difficulties. She was responsible for shipping an enormous amount of opioids out into the community and had on hand even more that she also intended to traffic. She also had a troubling number of firearms in her possession.

### 3. The Need to Promote Respect for the Law and Deterrence

The Defendant's decision to begin drug dealing (assuming this is the beginning) should be deterred. Similarly, others who may also be drawn to a life of crime, or to continue one, should see the Defendant's sentence as a reason not to get into or continue their life of crime.

A guidelines sentence is appropriate to promote respect for the law and deter future criminal behavior both by the defendant and by others. Deterring the defendant from committing this kind of crime again will protect the public from further crimes by her while also incapacitating her during the period of her incarceration, so a 46 month sentence (within the guidelines range but at the bottom) serves multiple purposes.

As to other considerations like substance abuse treatment and educational opportunities, given her difficulty finding and maintaining work she could benefit from job training opportunities such as those recommended in the PSR. Courses on parenting (ECF 87 at 20) may also prove helpful given the chaotic environment she grew up in and in helping her find a different path for herself as a new mother. The real issues here, for this particular defendant, are a just punishment that suits the significant and prolific criminal conduct she engaged in as part of the offense and deterrence.

### IV. <u>CONCLUSION</u>

The Defendant's prolific online narcotics trafficking and other factors discussed above all demonstrate the need for a period of incarceration, to be followed by five years of supervised

release. Therefore, the government believes that a sentence within the sentencing guidelines is appropriate here. Such a sentence serves the interest of justice and appropriately balances the sentencing factors articulated under 18 U.S.C. § 3553(a).

Respectfully Submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:      */s/ Peter V. Roman*
      Peter V. Roman
      Assistant United States Attorney
      D.C. Bar No. 984996
      U.S. Attorney's Office for the District of Columbia
      601 D Street NW, Washington, D.C. 20530
      (202) 252-7115
      Peter.Roman@usdoj.gov